**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-2277**

_____

BETTY B. THOMPSON,

            Plaintiff – Appellant,

      v.

MICHAEL  J.  ASTRUE,  Commissioner  of  Social  Security
Administration,

            Defendant – Appellee.

_____

Appeal from the United States District Court for the District of
South Carolina, at Anderson.   Joseph F. Anderson, Jr., District
Judge.  (8:09-cv-01968-JFA)

_____

Submitted:  July 19, 2011          Decided:  August 10, 2011

_____

Before DUNCAN, WYNN, and DIAZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

W.  Daniel  Mayes,  SMITH,  MASSEY,  BRODIE,  GUYNN  &  MAYES,  P.A.,
Aiken,  South  Carolina,  for  Appellant.    William  N.  Nettles,
United  States  Attorney,  Marvin  J.  Caughman,  Assistant  United
States  Attorney,  Columbia,  South  Carolina;  Thomas  S.  Inman,
Special  Assistant  United  States  Attorney,  John  Jay  Lee,  Acting
Regional  Chief  Counsel,  Denver,  Colorado,  for  Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Betty B. Thompson appeals the district court's order affirming the Commissioner's denial of her application for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. §§ 405(g) (2006).

We must uphold the decision to deny benefits if the decision is supported by substantial evidence and the correct law was applied. Id.§ 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 653 (internal quotation marks omitted). This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the Commissioner's decision. Id.

Thompson bears the burden of proving that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5) (2006); English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). The Commissioner uses a five-step process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). Pursuant to this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a

severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy. Id. The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, Thompson asserts that the administrative law judge ("ALJ") erred in finding she could perform past relevant work. Second, Thompson contends that, without justification, the ALJ failed to give controlling weight to the opinion of a treating physician. Third, she argues that the ALJ failed to properly analyze her credibility. We find no reversible error and, for the reasons that follow, we affirm.

I.

The issue at step four of the five-step process is whether the claimant can perform her past relevant work; the claimant bears the burden of establishing that she cannot. Yuckert, 482 U.S. at 146 n.5. Thompson contends that the ALJ committed numerous errors in determining that she could perform her past relevant work. We examine each contention in turn.

3

First, Thompson asserts that the ALJ found she had severe mental impairments, namely depression and anxiety, and that these impairments limited her ability to perform basic work activities. She argues that the Commissioner's decision that she is not disabled is not supported by substantial evidence because the ALJ's questions to the vocational expert failed to reflect these limitations.[1]

We conclude that the ALJ's hypothetical was "based upon a consideration of all relevant evidence of record on the claimant's impairment." English, 10 F.3d at 1085. The ALJ reviewed Thompson's depression and generalized anxiety, noted she was successfully treated, and concluded, "[Thompson's] depression and anxiety do not interfere with her ability to understand, carry out, and remember simple instructions, use judgment, respond appropriately to supervisors, co-workers, and usual work situations, or deal with changes in a routine work setting."[2]

---

[1] "In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment." English, 10 F.3d at 1085.

[2] We note and distinguish decisions of the Third Circuit in Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004), and the Eleventh Circuit in Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176 (11th Cir. 2011), which found error where an ALJ's hypothetical failed to set forth impairments identified at step (Continued)

4

Thompson also notes that although the ALJ found she required a sit-stand option, he failed to state how frequently she needed to alternate between sitting and standing. She argues that the ALJ's finding was too vague for a proper determination of the restriction's impact on her RFC. Thompson relies on Social Security Ruling ("SSR") 96-9p, which states that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."

The purpose of SSR 96-9p is "[t]o explain the Social Security Administration's policies regarding the impact of a[n] [RFC] assessment for less than a full range of sedentary work on an individual's ability to *do other work*." SSR 96-9p (emphasis added). Moreover, the ruling's introduction explains that once it has been determined that a claimant is not engaging in substantial gainful activity (Step One), has a severe medically determinable impairment (Step Two), which does not meet or equal the criteria of a listing (Step Three) but prevents an

two. The Third and Eleventh Circuits both noted that "there may be a valid explanation for this omission from the ALJ's hypothetical," Ramirez, 372 F.3d at 555, but such explanation was not supported by the record. Here, although the ALJ gave Thompson the benefit of thea doubt at step two, finding her depression and anxiety disorders were severe impairments, at step four the ALJ noted that Thompson had been successfully treated and therefore concluded that her mental residual functional capacity ("RFC") was not restricted.

5

individual from performing past relevant work (Step Four), "it must be determined whether the individual can do any other work." Id. The ruling specifies how the occupational base is impacted when a claimant is unable to perform a full range of sedentary work and it enumerates exertional limitations, including a sit-stand requirement, that can erode the occupational base. Id.

As the magistrate judge noted, SSR 96-9p is not applicable to this case. Here, the sequential evaluation terminated at Step Four, where Thompson had the burden of proving she could not perform past relevant work. The evaluation never proceeded to Step Five, where the Commissioner would have been required to prove that Thompson could "make an adjustment to *other work*." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (emphasis added); Yuckert, 482 U.S. at 146 n.5. Thus, the Medical-Vocational Rules, Thompson's occupational base, and the impact of any exertional or nonexertional limitations on that base were never in issue in this case. See SSR 83-12 (explaining how disability determination using Medical-Vocational Rules is based upon a claimant's remaining occupational base). Thompson's medical records did not mention a need to alternate between sitting and standing, much less according to a schedule. The ALJ's RFC finding and hypothetical

6

were consistent with an at-will sit-stand option, and we find that no greater specificity was required here.

Thompson next argues that the ALJ summarily concluded that she could return to her past relevant work, but failed to make specific findings regarding the physical and mental demands of that work.

In determining a claimant's ability to perform past relevant work, the Commissioner "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Here, the ALJ questioned the vocational expert concerning the nature of Thompson's previous work. Relying on the Dictionary of Occupational Titles, the vocational expert testified as to the skill and exertional levels of telemarketing positions. The ALJ compared Thompson's residual functional capacity with the physical and mental demands required of a telemarketer and concluded that the work did not "require the performance of work-related activities precluded by [Thompson's] residual functional capacity." We therefore conclude that the ALJ made the required findings.[3]

---

[3] Thompson's contention that the ALJ failed to explain how she could work as a telemarketer, a semi-skilled occupation, when she was restricted to simple instruction tasks rests on an
(Continued)

7

Thompson next asserts that the ALJ failed to properly analyze the written opinion of Dr. Hughes, her treating physician. She argues that the opinion of Dr. Hughes, was entitled to controlling weight.

The Commissioner has promulgated regulations addressing how medical opinions are to be considered in disability determinations. See 20 C.F.R. §§ 404.1527, 416.927 (2010). The Commissioner evaluates every medical opinion received but generally determines the weight each opinions is to receive based on the relationship between the physician and the claimant. Under the "treating physician rule," a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record. See 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. §§ 404.1527(d)(4),

---

unwarranted premise. As discussed above, the ALJ did not find Thompson suffered from any mental restrictions.

416.927(d)(4). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

We believe that the ALJ's decision to afford less weight to Dr. Hughes' opinion, despite his status as a treating physician, is supported by substantial evidence. Dr. Burrus, an orthopedist, noted that Thompson was neurologically intact and was walking better, and encouraged her to try to return to sedentary work. See 20 C.F.R. §§ 404.1527(d)(45), 416.927(d)(54) (stating Commissioner gives greater weight to opinion of a specialist about medical issues related to his or her area of specialty). Later, Dr. McQueen examined Thompson at the request of the Commissioner and found negative straight leg raising tests, no muscle weakness or sensory deficit, normal gait and "no true measurable orthopaedic impairment." And sState agency medical consultants opined that Thompson could perform light work with some limitations.

In contrast, Dr. Hughes listed Thompson's diagnoses, but failed to explain how her conditions impacted her abilities. Rather than providing a reasoned explanation, Dr. Hughes simply opined in his conclusory fashion that Thompson was "permanently and totally disabled" and "will never be able to perform substantial gainful work activity." Thus, Dr. Hughes' letter

9

more closely resembled an opinion on a matter reserved to the Commissioner than a medical opinion. <u>See</u> 20 C.F.R. §§ 404.1527(e), 416.927(e) ("Opinions on some issues . . . are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case."). Such opinions are not afforded any special significance.[4] <u>See</u> 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3).

## III.

Finally, Thompson contends that the ALJ failed to adequately explain why he rejected her stated reasons for being unable to return to her past relevant work. She argues the ALJ never specifically explained why he found Thompson not credible at the hearing. We believe the ALJ's credibility determination is supported by substantial evidence.

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." <u>Craig</u>, 76 F.3d at 594. Once a threshold determination is made that

---

[4] Thompson asserts that if the ALJ found Dr. Hughes' letter statement was lacking in specificity, he should have contacted Dr. Hughes for clarification. Regulations may require such action recontact when evidence is inadequate to determine whether a claimant is disabled, . <u>sSee</u> 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), but here . Here, the ALJ had sufficient evidence to reach a decision.

objective medical evidence shows the existence of a medical impairment which could reasonably be expected to produce the pain alleged, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Id. at 595. The second step is analyzed using statements from treating and nontreating sources and from the claimant. 20 C.F.R. §§ 404.1529(a), 416.,929(a) (2010). Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant. See SSR 96-7p. The ALJ clearly complied with these requirements.

IV.

Based on the foregoing, we find that substantial evidence supports the agency decision, and affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11