[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17187
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cv-02345-TBM

JACQUELINE ANN ANTEAU,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 14, 2017)

Before JULIE CARNES, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Jacqueline Ann Anteau appeals the district court's order affirming the Commissioner's denial of her application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g).  Anteau raises issues on appeal relating to the ALJ's consideration of Anteau's diagnosis of Asperger's disorder.  Anteau contends the ALJ erred by determining the opinion of her licensed clinical social worker, Julie Wells, was entitled to little weight.  Anteau also asserts substantial evidence supported a finding she had Asperger's disorder and met the requirements of Listing § 12.10, but the ALJ failed to evaluate Asperger's disorder or acknowledge the diagnosis.  After review,[1] we affirm.

## I.  DISCUSSION

### A.  Licensed Clinical Social Worker's Opinion

In determining whether a claimant is disabled, the ALJ will always consider the medical opinions in a case record together with the rest of the relevant evidence received.  20 C.F.R. § 404.1527(b).  In addition to evidence from acceptable medical sources such as physicians and psychologists, evidence from other sources

---

[1]  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "[W]e review *de novo* the legal principles upon which the Commissioner's decision is based."  *Id.*  The resulting decision is reviewed only to determine whether it is supported by substantial evidence.  *Id.*  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted).  "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."  *Id.*

may also be used to show the severity of impairments and how it affects ability to work. 20 C.F.R. § 404.1513(a) (2016). The Social Security Administration has explained only evidence from "acceptable medical sources" can establish the existence of a medically determinable impairment, and only "acceptable medical sources" can give medical opinions or be considered treating sources, whose medical opinions may be entitled to controlling weight. SSR 06-03p, 2006 WL 2329939 at *2 (S.S.A. Aug. 9, 2006). "Other sources" include medical sources, who are not "acceptable medical sources," such as licensed clinical social workers. *Id.* Evidence from "other sources" may show the severity of the individual's impairment and how it affects the individual's ability to function. However, information from "other sources" cannot establish the existence of a medically determinable impairment. *Id.*

Because Wells was a licensed clinical social worker, she was not an "acceptable medical source" and she could not establish the existence of a medically determinable impairment. *See* SSR 06-03p. Instead, as a licensed clinical social worker, she was considered an "other medical source," and while the ALJ was required to consider her opinion, he was not required to give it significant weight. To determine whether Anteau had Asperger's disorder, the ALJ needed objective medical evidence from an acceptable medical source to establish Asperger's disorder. *See* 20 C.F.R. § Pt. 404, Subpt. P, App.1 § 12.00. The only

3

acceptable medical source that diagnosed Anteau with Asperger's disorder was Dr. Gerald Hodan.  However, Dr. Hodan's opinion was based on Anteau's subjective claims rather than objective evidence, and the ALJ did not err in determining Dr. Hodan's opinion was not entitled to great weight.  *See* 20 C.F.R. § 404.1527(c).

Without an acceptable medical source to establish a medically determinable mental disorder, Wells' opinion regarding the severity of Anteau's Asperger's disorder and its effects on Anteau's ability to function in a work setting was undermined.  The ALJ credited the opinion of Dr. Michael S. Greenberg, who conducted a psychological exam of Anteau and stated he had not seen any signs of Asperger's disorder.  As Wells was not a licensed psychologist or psychiatrist and her opinion was based on diagnoses questioned by Dr. Greenberg, the ALJ did not err in determining Wells' opinion was not entitled to considerable weight.

The ALJ reviewed Wells' opinion by asking about it during the hearing and stating in his decision the record contained several opinions from Wells that found Anteau completely incapable of maintaining competitive employment.  *See* 20 C.F.R. § 404.1527(b).  Accordingly, the ALJ properly weighed Wells' opinion because while the ALJ acknowledged her opinion in his decision, she was not an accepted medical source, her opinion was contradicted by the psychologist credited by the ALJ, and the only acceptable medical source that diagnosed Anteau with Asperger's disorder was a psychologist whose opinion was given little weight.

4

*B. Listing § 12.10*

As an initial matter, even though the ALJ failed to mention Asperger's disorder and Listing § 12.10 in his decision, the ALJ's determination that Anteau's diagnosis of Asperger's disorder did not meet Listing § 12.10 was implicit in the ALJ's determination that Anteau had the residual functioning capacity to perform her past relevant work.  The ALJ would only have reached that determination by first determining that Anteau had no severe impairment that met or equaled a listed impairment.  *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (stating there may be an implied finding that a claimant does not meet a listing, even if an ALJ does not explicitly state the claimant's impairments were not contained in the listings, when the ALJ reaches the fourth step of the disability analysis, in which the ALJ determines whether the claimant has the capacity to perform her past relevant work); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there is no rigid requirement the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable the district court or us to conclude the ALJ considered the medical condition as a whole).

Additionally, even if the ALJ failed to discuss why Anteau's Asperger's disorder did not meet a listed impairment, substantial record evidence supports the condition did not actually or functionally meet the listed impairment, and therefore,

5

the ALJ's ultimate conclusion Anteau was not disabled was supported.  Anteau
failed to demonstrate medically documented findings for all the criteria of Listing
§ 12.10.  *See Moore*, 405 F.3d at 1211 (providing the individual seeking Social
Security disability benefits bears the burden of proving she is disabled); 20 C.F.R.
Pt. 404 Subpt. P App. 1 § 12.10.  Anteau needed to show she had (a) qualitative
deficits in reciprocal social interaction; and (b) qualitative deficits in verbal and
nonverbal communication and in imaginative activity; and (c) markedly restricted
repertoire of activities and interests; resulting in at least two of the following:  (1)
marked restrictions of activities of daily living; (2) marked difficulties in
maintaining social functioning; (3) marked difficulties in maintaining
concentration, persistence, or pace; or (4) repeated episodes of decompensation.
20 C.F.R. Pt. 404 Subpt. P App. § 12.10  (2016).  "Where we use "marked" as a
standard for measuring the degree of limitation, it means more than moderate but
less than extreme." *Id*. § 12.00C.  A marked limitation may arise if several
activities or functions are impaired, or even if only one is impaired, as long as the
degree of limitation interferes seriously with the ability to function independently,
appropriately, effectively, and on a sustained basis. *Id.*

Anteau failed to show she had a marked restriction in her daily living.  20
C.F.R. Pt. 404 Subpt. P App. 1 § 12.10B.  While Anteau reported difficulty
keeping friends and socializing with others, she also reported the ability to go

6

shopping in stores, which required at least some ability to interact with others and be around crowds, and the ability to go scuba diving and kayaking, during which she had the assistance of a partner to help her carry her equipment. She completed a Master's Degree in Public Health Administration, which would require some interaction. Therefore, while she might have mild or moderate degree of limitation in her social functioning, the evidence has not shown that her limitations were so marked as to interfere seriously with her ability to function independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. Pt. 404 Subpt. P App. 1 § 12.00C.

Anteau failed to show she had marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404 Subpt. P App. 1 § 12.10B. At her hearing, Anteau responded to questions appropriately and provided adequate information. Anteau acknowledged the ability to handle her personal finances and drive a car, which inherently requires a minimum ability to focus, understand, and remember while exercising independent judgment and decision-making skills. Dr. Greenberg reported the claimant was able to recall three-out-of-three objects after five minutes, which demonstrated intact memory and concentration. While her working memory was low average, fund of information was low average, and arithmetic ability was low average, her abstract thinking and verbal reasoning were average. She also testified she had a Master's Degree in

7

Public Health Administration, which would require some level of concentration and persistence. Therefore, while she might have mild or moderate degree of limitation in maintaining concentration, persistence, or pace, the evidence has not shown her limitations were so marked as to interfere seriously with her ability to function independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. Pt. 404 Subpt. P App. 1 § 12.00C.

Lastly, Anteau failed to show she had repeated episodes of decompensation, as there is no evidence of any episodes of decompensation in the record. *See* 20 C.F.R. Pt. 404 Subpt. P App. 1 § 12.10B. Therefore, because Anteau's medically determinable mental impairments cause no more than mild limitations and no episodes of decompensation, she has not shown that she had Asperger's disorder that met or equaled Listing § 12.10.

## II. CONCLUSION

The ALJ properly weighed the licensed clinical social workers opinion, and the ALJ's finding that Anteau was not disabled was supported by substantial evidence. Accordingly, we affirm.

**AFFIRMED.**