[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11656

_____

KATHLEEN STEELE,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cv-02522-VMC-AEP

_____

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

This case involving a posthumously conceived child returns to us for disposition from the Florida Supreme Court, to which we certified two questions of Florida law. *Steele v. Comm'r of Soc. Sec.* ("*Steele I*"), 51 F.4th 1059, 1065 (11th Cir. 2022). In considering our certified questions, the Florida Supreme Court found our first question dispositive: "Under Florida law, is P.S.S. 'provided for' in the decedent's will within the meaning of Fla. Stat. § 742.17(4)?" *Id.*; *see Steele v. Comm'r of Soc. Sec.* ("*Steele II*"), No. SC2022-1342, 2024 WL 630219 (Fla. Feb. 15, 2024). In answering this question, the Florida Supreme Court held that "'provided for' in section 742.17(4) means that the testator actually left something to the posthumously conceived child through the will" and that, as such, "the will must show that the testator contemplated the possibility of a child being conceived following his or her death." *Steele II*, 2024 WL 630219, at *3. And the Florida Supreme Court concluded that the will of the decedent, Phillip Steele, did not provide for P.S.S., Mr. Steele's posthumously conceived child. *Id.*

As we explain below, we hold that Mr. Steele's will does not provide for P.S.S. and that he is not "eligible for a claim against the decedent's estate," § 742.17(4), based the Florida Supreme Court's answer to our first certified question. Therefore, the administrative law judge did not err in denying Katherine Steele's claim for child's insurance benefits ("CIB") for P.S.S. Accordingly, we affirm the district court's order upholding the administrative law judge's decision.

## I.    RELEVANT BACKGROUND

We have set forth the relevant facts of this appeal in *Steele I*, 51 F.4th at 1061–62, but we briefly recount them for context.  Mr. Steele, before his death, provided sperm samples to a fertility clinic. *Id.* at 1061.  Following Mr. Steele's death, Ms. Steele used one of those samples and conceived P.S.S. through *in vitro* fertilization. *Id.* Additionally, before Mr. Steele's death, he prepared a will that specifically listed his living children but also stated, "[t]he terms 'children' and 'lineal descendants' shall include those later born or adopted and whenever used in this instrument shall be equivalent to blood relationship and relationship by adoption." *Id.*

After P.S.S.'s birth, Ms. Steele applied for CIB under the Social Security Act on behalf of P.S.S., but the Social Security Administration denied her claim. *Id.*  Ms. Steele sought administrative review of that denial, but an administrative law judge similarly denied the claim for CIB. *Id.* at 1061–62.  Ms. Steele then challenged the denial of her claim for CIB in federal court. *Id.* at 1062; *see* 42 U.S.C. §§ 405(g), 1383(c)(3).  A magistrate judge recommended affirming the administrative law judge's decision, and the district court adopted the magistrate judge's recommendation over Ms. Steele's objections. *Steele I*, 51 F.4th at 1062.  This appeal ensued.

## II.    STANDARD OF REVIEW

When an administrative law judge denies benefits and the Appeals Council denies review, as occurred in this case, we review the administrative law judge's decision as the Commissioner's final decision. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th

Cir. 2021).  For factual questions, we determine whether the denial is supported by substantial evidence.  *Id.*  "In reviewing for substantial evidence, we 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of' the administrative law judge.  *Id.* at 1314 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  But we review questions of law presented by the administrative law judge's decision *de novo*.  *Id.* at 1313–14.

## III.    ANALYSIS

As we explained in *Steele I*, the main issue in this appeal is whether P.S.S.—Mr. Steele's posthumously conceived child—is considered a "child" within the meaning of the Social Security Act and is entitled to CIB.  51 F.4th at 1062–63.

Under the Social Security Act, an applicant qualifies for CIB if he "meets the Act's definition of 'child,' is unmarried, is below specified age limits (18 or 19) or is under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death."  *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 547 (2012); 42 U.S.C. § 402(d).  The Social Security Act defined "child," in relevant part, as "(1) the child or legally adopted child of an individual, (2) a stepchild [under certain circumstances], and (3) . . . the grandchild or stepgrandchild of an individual or his spouse [who meets certain conditions]."  *Astrue*, 566 U.S. at 547 (alterations in original); 42 U.S.C. § 416(e).  Additionally, a subsequential definition provision—42 U.S.C. § 416(h)(2)(A)—provides that "[i]n determining whether an applicant is the child or parent of [an] individual

for purposes of this subchapter, the Commissioner of Social Security shall apply [the intestacy law of the insured individual's domiciliary State]." *Astrue*, 566 U.S. at 548 (some alterations in original) (quoting § 416(h)(2)(A)). Section 416(h)(2)(A) "completes the definition of 'child' 'for purposes of th[e] subchapter' that includes § 416(e)(1)." *Id.* at 558 (quoting § 416(h)(2)(A)).

"Whether posthumously conceived children can inherit through intestacy under Florida law" was a question of first impression for this Court, *Steele I*, 51 F.th at 1064, and the parties disputed the meaning and application of Florida Statute § 742.17(4) to the case, which provides that a "child conceived from the eggs or sperm of a person or persons who died before the transfer of their eggs, sperm, or preembryos to a woman's body shall not be eligible for a claim against the decedent's estate *unless the child has been provided for by the decedent's will*." (Emphasis added). Given this, we certified two questions to the Florida Supreme Court: (1) "[u]nder Florida law, is P.S.S. 'provided for' in the decedent's will within the meaning of Fla. Stat. § 742.17(4)?"; and (2) "[i]f the answer is yes, does Florida law authorize a posthumously conceived child who is provided for in the decedent's will to inherit intestate the decedent's property?" *Steele I*, 51 F.4th at 1065.

After considering our certified questions, the Florida Supreme Court determined that the first question—the interpretation of the phrase "provided for" in section 742.17(4)—was

dispositive.[1] *Steele II*, 2024 WL 630219, at *2. Applying the supremacy-of-text principle to section 742.17(4), the Florida Supreme Court noted that "[t]he term 'provided for' is not defined in the statute or in any other part of chapter 742." *Id.* (quoting § 742.17(4)). Therefore, the court looked to other "sources bearing on its objective meaning." *Id.* After considering "era-appropriate" dictionaries and its case law in a related context, the Florida Supreme Court concluded that "'provided for' in section 742.17(4) means that the testator actually left something to the posthumously conceived child through the will," i.e., "the child must have some inheritance right under the will." *Id.* at *3. As part of this requirement, the court explained, "the will must show that the testator contemplated the possibility of a child being conceived following his or her death." *Id.*

Applying this standard to the facts of this case, the Florida Supreme Court determined that Mr. Steele's will did not "provide for" P.S.S. because "[n]o part of the will acknowledges the possibility of children being conceived after Mr. Steele's death." *Id.* The court interpreted the will's reference to afterborn or adopted children as referring "most naturally to children born after his will was drafted but conceived before his death, i.e., when the dispositional portions of the will create vested rights." *Id.* "Thus, this reference

---

[1] Because the Florida Supreme Court determined the first certified question was dispositive of the case, it declined to answer the second question. *Steele II*, 2024 WL 630219, at *4.

20-11656                Opinion of the Court                7

to later-born children would not cover P.S.S., who was conceived after Mr. Steele's death." *Id.*

Moreover, the Florida Supreme Court found that, even if "post-death conception was in some generic sense contemplated by Mr. Steele, P.S.S. could not have received anything under the will," as "Mr. Steele's will conveyed *all* relevant property to Ms. Steele." *Id.* The court explained that, "[i]n the event that Ms. Steele had died before Mr. Steele, the tangible personal property would have been distributed to his 'then living children.'" *Id.* "By its terms," the court explained, "this fallback provision only applied to children living at the time Mr. Steele died and necessarily excluded any posthumously conceived children, like P.S.S." *Id.* Thus, the Florida Supreme Court concluded that "as it was impossible for P.S.S. to inherit anything from the will, it is clear that Mr. Steele did not provide for P.S.S. as contemplated by section 742.17(4)." *Id.*

For the reasons stated in the Florida Supreme Court's decision in *Steele II*, we conclude that P.S.S., who was conceived after Mr. Steele's death, was not "provided for" in Mr. Steele's will, as contemplated by section 742.17(4). Therefore, under the intestacy law of Florida, P.S.S. is not "eligible for a claim against the decedent's estate" under section 742.17(4) and cannot inherit Mr. Steele's personal property through intestacy, which means that P.S.S. is not considered a "child" of Mr. Steele for purposes of qualifying for CIB under the Social Security Act. Accordingly, the administrative law judge did not err in denying Ms. Steele's claim for

CIB on behalf of P.S.S., and we affirm the district court's order upholding the administrative law judge's decision.

### IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order upholding the administrative law judge's denial of Ms. Steele's claim for CIB on behalf of P.S.S.

**AFFIRMED.**